| .THOMAS F. DALEY, Judge.
The Jefferson Parish District Attorney filed a Bill of Information charging the defendant, Rodney Shannon, with unauthorized entry of an inhabited dwelling, a violation of La. R.S. 14:62.3. The defendant pled not guilty at his arraignment. . On March 30, 2004, a six-person jury found the defendant guilty as charged.
Following trial, the defendant filed several pro se motions, including a Motion for Minimal Sentence, a Motion for a New Trial, and a Motion for Post Verdict Judgment of Acquittal. On May 19, 2004, the defendant withdrew all motions. The defendant was sentenced to two years at hard labor, but suspended all but six months of the sentence, and placed the defendant on two years of active probation.
At trial, Patricia Richardson testified that she and the defendant had dated intermittently for five years. She had previously lived with the defendant in his apartment on Verrett Street, but as of January 2, 2002 she leased her own apartment at 1149 Orange Blossom Lane in Harvey, where she lived with her two sons, Corey and Brandon, and her daughter.' The defendant did not sign the 1 ..application for the lease; rather, Richardson listed him as an emergency contact and listed his address as 828 Verrett Street.
According to Richardson, she and the defendant sometimes spent the night at each other’s apartments. Richardson said that, in May of 2002, the defendant had stayed at her apartment for a “couple of days,” because he had been evicted from his apartment. She also stated that she gave the defendant a key at one point, but she did not believe that the defendant had a key on May 28, 2002. Additionally, Richardson testified that the defendant did not have her permission to be in her apartment on May 28, 2002.
Richardson testified that on May 28, 2002, between 2:00 a.m. and 3:00 a.m., she heard someone knocking at the door and ringing the doorbell. Then, she heard a loud noise and heard someone1 call her name. Brandon, her son who was twenty years old at the time of this incident, testified that he went to let his mother know the defendant was beating on the door. *522 Brandon testified that his mother said not to let the defendant in the apartment. However, the defendant kicked a hole in the bottom of the door, stuck his hand through, and unlocked the door. The defendant said he wanted to talk to Richardson, pushed Brandon aside, and started up the stairs.
Corey Richardson, who was eighteen or nineteen years old at the time of the incident, testified that the noise at the door woke him up. When he heard a “cracking” sound, he went to the stairway. He saw the defendant push Brandon at the bottom of the staircase. Corey testified that the defendant came upstairs toward him and pushed him aside. While Richardson was calling the police, the defendant grabbed her hand. Then, Corey “slammed” the defendant into a closet and the defendant hit him in the lip.
4Corey and Brandon testified that the defendant smelled of alcohol. They also testified that they did not give the defendant permission to enter the apartment. Both of them testified that the defendant never had a key and did not live with them. Neither of them was aware that the defendant had ever spent the night at the apartment.
Deputy Carl Cade and another officer from the Jefferson Parish Sheriffs Office responded to the call. Deputy Cade testified that the door was almost in two pieces. According to Deputy Cade, Richardson was scared and shaking. She told Deputy Cade that the defendant was upstairs. The officer found the defendant in an upstairs bedroom scuffling with two other males and placed him under arrest. Deputy Cade acknowledged that the police report written by the other officer, who was no longer with the Sheriffs Office, did not reflect the defendant was under the influence of alcohol.
According to Sandra Weigel, the aparN ment manager, Richardson called on May 29, 2002 to tell her that the front door was damaged. A maintenance man repaired the door, which cost $264.85, because he had to replace the entire front door and frame.
Richardson acknowledged that she and the defendant had previously quarreled over the defendant’s fathering another child outside of their relationship. Richardson testified that this quarrel did not occur on the day of the incident. According to Richardson, she had attempted to drop the charges against the defendant prior to trial, because she believed that he had changed and things were working out between them. However, she was told that the charges could not be dropped. Richardson testified that, over the two years since the defendant’s arrest, she had spoken to the defendant over the telephone many times and that she had intimate relations with him. Finally, Richardson acknowledged that she still cared |5for the defendant, but said that she still wanted to go forward with the case. She said, if it was left up to her she would like him to “straighten up his act toward women,” but she did not want him to spend any time in jail.
The defendant testified that he was evicted from his apartment as of May 1, 2002, and that he lived with Richardson and her two sons thereafter. He stated that on May 28, 2002, he told Richardson that he might have fathered another child outside of their relationship. He left the apartment because she was angry. Later that night he returned to sleep. He called her on her cell phone to let her know that he was returning. ■ The defendant testified he had a key, but he did not want to just walk in because she was angry. So, he knocked on the door and Corey answered it. However, after he stepped inside, Co *523 rey tried to push him out. The defendant said he walked past Brandon, and did not shove him or Corey. Thereafter, he went upstairs. According to the defendant, the door was termite-ridden and sustained damage when Cory tried to push him out. The defendant said he had nothing to drink that night and denied punching Corey. The defendant admitted that he was previously convicted of battery on a police officer.
In his sole Assignment of Error, the defendant argues that his sentence is constitutionally excessive because the trial court ordered a term of imprisonment, albeit for six months. The defendant claims that he should not have received any term of imprisonment because the incident arose out of a domestic dispute between he and the victim, and the evidence against him was “weak.” The State argues that the trial court did not abuse its discretion in sentencing the defendant.
After trial, the defendant filed several pro se motions urging the court to impose the minimum sentence for several reasons, including that he only had a prior misdemeanor conviction and the victim requested that he not receive a jail sentence. The defendant also filed a “Letter of Apology,” requesting forgiveness |fiffom Richardson, her sons, and the court. The defendant said that his actions had been detrimental to himself because he lost his job, his freedom, and possibly his family. He also pled for a second chance. Two of the three motions were set for the day of sentencing. However, prior to sentencing, the defendant withdrew all motions. He did not file a Motion to Reconsider Sentence.
The failure to file a Motion to Reconsider Sentence or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Dupre, 08-256, p. 5 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Eighth Amendment to thé United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Brown, 01-160, p. 8 (La.App. 5 Cir. 5/30/01), 788 So.2d 667, 674. The trial judge has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Thompson, 02-333 (La.4/9/03), 842 So.2d 330, 338.
A conviction of unauthorized entry of an inhabited dwelling carries a maximum sentence of six years, with or without hard labor, and the possibility of a one thousand dollar fine. The defendant, who was thirty-seven years old at the time of sentencing, received a two-year sentence at hard labor, with all but six |7months of the sentence suspended. It does not appear that the trial court imposed a fine as part of the sentence.[1]
In the present case, the trial court did not provide any reasons for the sentence imposed. However, the trial court is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness, if the record supports the sentence *524 imposed. State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04) 888 So.2d 192. See, State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 817, upholding a sentence where the record supported the sentence, despite the trial court’s failure to state any reasons for the sentence imposed. The question presented when reviewing a defendant’s sentence is not “whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion.” State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133.
Merely because the .defendant’s behavior was rooted- in a domestic dispute does not mean that a term of imprisonment was inappropriate. In State v. Holmes, 98-490, (La.App. 5 Cir. 3/10/99), 735 So.2d 687, this Court held that the trial court did not abuse its discretion in sentencing a defendant convicted of unauthorized entry of an inhabited dwelling to three years at hard labor (which was not suspended). In Holmes, the defendant had claimed that the sentence was excessive because he had no prior serious involvement with the law, the matter involved a domestic dispute with his ex-wife and no one was injured. Id. at 689, 691-692.[2]
I sin the present case, the record supports the sentence imposed by the trial court that was one-third of the maximum term of imprisonment with all but six months of that sentence being suspended. Richardson and her children testified that the defendant barged into their home, in the early morning hours, and shoved both young men out of the way, causing injury to one of them. According to the responding officer, the door was nearly in two pieces, and Richardson was frightened and shaking. Richardson’s son, Corey, was injured, during the defendant’s home invasion. In addition, the defendant admitted at trial that he had a prior conviction for battery on a police officer.

ÉRROR PATENT DISCUSSION

The record was reviewed for errors patent, according to La C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
There is a discrepancy between the commitment and the transcript. The commitment reflects that the trial court specified the sentence would be served concurrently with any other sentence the defendant was serving, while the transcript reflects the trial judge made this specification for another sentence, two counts of simple battery, which are misdemeanors, and were tried simultaneously by the triaí judge. The defendant was found guilty on both counts. He was sentenced on all three counts on the same day. The trial judge ordered the simple battery sen-, tences to be served concurrently with any other sentence the defendant was serving. However, the trial judge did not make this specification for the felony sentence. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, this case is remanded to allow the trial judge to correct the | ¡¡commitment to delete the reference that the sentence should be served concurrently with any other sentence the defendant was currently serving.
In addition, the sentence is indeterminate because the trial court did not specifically state that the defendant was placed on an active probationary period of *525 two years for the felony sentence of unauthorized entry of an inhabited dwelling. In addition, the sentence is indeterminate because of the trial court’s statement regarding the defendant’s paying “fees and fines to probation” make it unclear whether it is a fine, as provided by the penalty provision of La. R.S. 14:62.3(B), or the monthly probation fee required in La. R.S. 895(A) and 895.1(C), imposed as a condition of probation. If the reference was to a probation fee, La.C.Cr.P. art. 895.1(C) requires the court to set the monthly fee at not less than $50.00 nor more than $100.00 payable to the Department of Public Safety and Corrections or such other probation office, agency, or officer as designated by the court, to defray the cost of supervision.[3]
La.C.Cr.P. art. 879 requires the trial court to impose a determinate sentence. In State v. Lachney, 621 So.2d at 848, this Court found that the term of the sentence was indeterminate in violation of La. C.Cr.P. art. 879, and remanded the matter for the trial judge to clarify the sentence on resentencing. Therefore, this case is remanded to allow the trial court to clarify the sentence on resentencing.
In addition, the defendant’s sentence is illegally lenient, because the trial judge failed to impose the mandatory conditions of probation as required by La. C.Cr.P. art. 895(A). According to La. C.Cr.P. art. 895(A), the court “shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific I mconditions reasonably related to his rehabilitation....” In addition, La.C.Cr.P. art. 895(1), provides that [t]he defendant shall be given a certificate setting forth the conditions of his probation and shall be required to agree in writing to the conditions.”
In State v. Carpenter, 00-486 (La.App. 3 Cir. 10/18/00), 772 So.2d 200, 203-204, writ denied, 00-3152 (La.1/25/02) 806 So.2d 665, the court recognized, as error patent, that the sentence was illegally lenient because the trial court placed the defendant on probation without following La. C.C.P. art. 895(A)’s requirements. However, the court declined to correct the error because the State did not claim any prejudice.[4] Id. at 204.
A reviewing court has the authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Accord, State v. Williams, 02-1016 (La.App. 5 Cir. 2/25/03), 841 So.2d 936, 945-946, writ denied, 03-2205 (La.8/20/04), 882 So.2d 571. In State v. Chisley, 03-426 (La.App. 5 Cir. 10/15/03), 860 So.2d 45, 50-51, writ denied, 03-3358 (La.4/2/04), 869 So.2d 874, this Court noticed an illegally lenient sentence on its own motion and remanded for resentencing. Therefore, this case is remanded to allow the trial court to impose the mandatory condition of probation.

CONVICTION AFFIRMED; MATTER REMANDED FOR RESENTENCING.

. The trial court stated that the defendant would have the period of probation to pay his “fines and fees,” but did not specifically order the defendant to pay any particular amount.

. Holmes was also convicted of three counts of assault by drive-by shooting, because he fired a gun, later the same day, at a vehicle containing his ex-wife, her ten-month-old son, and another person. Id. at 689.

. In lieu of the fee, a trial court is permitted to require the defendant to perform a specified amount of community service work each month, if the court finds the defendant is unable to pay the minimum supervision fee. See, La.C.Cr.P. art. 895.1(D).

. State v. Carpenter preceded the Louisiana Supreme Court’s decision in State v. Williams, infra, in which the Louisiana Supreme Court affirmed the appellate court's noticing, as an error patent, a defendant’s illegally lenient sentence.