934 So.2d 884 (2006)
STATE of Louisiana
v.
Kevin J. JUPITER.
No. 06-KA-93.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2006.
*886 Harry J. Morel, Jr., District Attorney, Juan A. Byrd, Assistant District Attorney, Hahnville, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Appellate Counsel, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
Defendant, Kevin J. Jupiter, appeals his convictions and sentences for one count of unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3, and one count of simple criminal damage to property over $500.00, a violation of LSA-R.S. 14:56. Upon review, we conditionally affirm the convictions and sentence, but remand for an evidentiary hearing on Assignment of Error Number 2.
On December 21, 2004, the St. Charles Parish District Attorney charged Jupiter with the above counts in a Bill of Information.[1] Defendant was arraigned on January *887 13, 2005 and pled not guilty. On April 5, 2005, a jury found defendant guilty as charged. Defendant filed a Motion for Post-Verdict Judgment of Acquittal, which was denied on April 15, 2005.
On May 12, 2005, defendant's Motion for New Trial was denied. On that same date, defendant waived sentencing delays, and the trial court sentenced defendant on Count 1 to imprisonment at hard labor for six years. Additionally, the trial court imposed a fine of $1,000.00, which the court suspended. On Count 2, the trial court sentenced defendant to imprisonment at hard labor for two years to run concurrently with the sentence on Count 1. It also imposed a fine of $1,000.00, which was also suspended. Defendant filed a Motion to Reconsider Sentence, which was denied.
Defendant filed a Motion for Appeal on June 28, 2005, which was granted. On February 3, 2006, this Court dismissed the appeal as untimely and remanded to the district court to allow defendant the opportunity to seek reinstatement of his appeal rights by Application for Post-Conviction Relief.[2] Defendant filed a Motion for Out-of-Time Appeal, which was granted.

FACTS
Annie Gross testified at trial that on December 12, 2004, at approximately 4:30 a.m., her daughter, Kendra Kennedy, came to her apartment, crying and upset, and told her that she and defendant had gotten into an argument. (Jupiter and Kennedy lived together with their three children.) Gross further testified that Jupiter subsequently knocked on the door of her apartment, but she refused to let him enter. She stated that defendant stayed on the porch and kept screaming for Kennedy to come outside. At that time, Gross' husband woke up and came into the living room. Gross testified that defendant then kicked the door in and entered her apartment without her permission, struck Kennedy, and then fled.
Gross testified that Kennedy called 911 and two officers responded. Gross testified that Kennedy received a telephone call from Jupiter while the officers were there, as evidenced by the caller ID box. Gross told the officers about the call, and the officers left. Gross later went to the district attorney's office to have the charges against defendant dismissed; however, she was informed that it was the State's decision as to whether the case would proceed.
Deputy Jeremy Pitchford of the St. Charles Parish Sheriff's Office testified that he responded to a battery call and was informed that the perpetrator (later identified as Jupiter) had fled in a blue Oldsmobile. Deputy Pitchford subsequently saw the vehicle on Paul Frederick Street, but by the time he ran the license plate and learned that it was registered to defendant, the vehicle was gone. Later on, he was advised that Deputy Morehouse had spotted Jupiter running from the Paul Maillard area back towards Paul Frederick Street, so Deputies Pitchford and Hirsh went to Paul Frederick Street to defendant's mother's house to search her residence for him. When they did so, Deputy Pitchford observed defendant run across the street. After a foot chase and a struggle, the officers apprehended defendant.
Deputy George Morehouse of the St. Charles Parish Sheriff's Office testified that he responded to a disturbance at 827 Milling Avenue and learned that defendant had kicked in the front door and had struck his girlfriend. He further testified that after Jupiter was apprehended, he placed defendant into the back of his police unit so he could bring defendant to the *888 hospital and then to lockup. As Deputy Morehouse started to drive, he looked in his rearview mirror and saw defendant lay back with his feet up. Based on his experience, Deputy Morehouse knew defendant was going to try to break the window, so he slammed on his brakes and exited the vehicle in an attempt to prevent defendant from doing so. Deputy Morehouse testified that defendant then kicked the driver's side passenger window and broke it, and that the glass struck him (Deputy Morehouse) in the face.
Ronald Guillory testified that he owned a body shop, and that he repaired the window on the police vehicle. He identified an invoice showing that the repairs cost $925.03.
Defendant did not call any witnesses.
After hearing the testimony and considering the evidence, the jury found defendant guilty as charged.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the evidence was insufficient to prove that he was guilty of simple criminal damage to property because the State failed to present any evidence showing that the damage was done without the consent of the owner.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.[3]
The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[4]
Defendant was convicted of simple criminal damage to property in violation of LSA-R.S. 14:56, which reads, in pertinent part:
A. Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.
Lack of consent of an owner to malicious vandalism of an owner's property can often be inferred circumstantially from the evidence presented.[5]
Ronald Guillory's testimony established that the owner of the vehicle he fixed was the St. Charles Parish Sheriff's Office. Deputy Morehouse, who drove that police unit, testified that he exited the vehicle in an attempt to prevent defendant from breaking the window. Nevertheless, defendant was able to kick and break the window before the deputy could stop him.
Based on the trial evidence, the jury could have reasonably inferred that Deputy Morehouse, who drove that unit for the *889 St. Charles Parish Sheriff's Office, did not consent to defendant breaking the window. After hearing the testimony and evaluating the credibility of the witnesses, the jury apparently believed that defendant committed simple criminal damage to property without the consent of the owner, the St. Charles Parish Sheriff's Office. Credibility determinations are for the jury, and it is not the function of the appellate court to assess the credibility of witnesses.[6] This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the trial court erred by denying his Motion for a New Trial that was based upon the failure of a juror to disclose during voir dire that she had been a victim of a crime, despite being asked. He notes that he had one peremptory challenge left at that time and would have used it had he known that information. He asserts that the juror's deception during voir dire deprived him of his constitutional and statutory right to an impartial jury verdict. He also asserts that the juror's use of the term "colored man" to describe the perpetrator of the crime against her implied that she was prejudiced toward defendant, since defendant is African American. He contends that he should receive a new trial and, at the very least, an evidentiary hearing to determine whether the prejudice affected the verdict.
The record reflects that prospective juror No. 196, Shannon Wilson, stated that she lived in Norco and was unemployed, single, and had no children. After obtaining background information on the prospective jurors and asking a few questions, the trial judge asked the prospective jurors several times if they or their close friends or family members had ever been the victims of a crime. The record indicates that Wilson remained silent.
In response to subsequent questioning by the State, Wilson indicated that she did not need the State to introduce scientific evidence such as fingerprints to prove defendant's guilt that she would not hold it against defendant if he did not testify, and that she would not allow sympathy to enter into her decision. Wilson further indicated that she would not hold the State to a higher standard than "beyond a reasonable doubt," and that, if the State proved its case beyond a reasonable doubt, she would "definitely" return a guilty verdict. In response to questioning by the defense, Wilson indicated that she did not need to hear defendant's side before she could render a verdict. Afterwards, the State and the defense accepted Wilson as a juror.
Defendant filed a Motion for New Trial based on LSA-C.Cr.P. art. 851(4), arguing that he had discovered, since the guilty verdict, a prejudicial error in the proceedings that, notwithstanding the exercise of reasonable diligence by defendant, was not discovered before the verdict. In that Motion, defendant alleged that Wilson had approached defense counsel after trial and informed her that she had been the victim of a crime perpetrated against her by a "colored man" and wished to know how to proceed to prosecute him. Defendant asserted that Wilson did not inform counsel of this during voir dire, even though the prospective jurors were asked whether any of them had ever been a victim of a crime. He contended that this fact was considered when choosing her as a juror.
At the hearing on the Motion for New Trial, the matter was submitted without *890 testimony or argument. The trial judge subsequently denied the motion, stating that nothing was alleged in the motion that would warrant the granting of a new trial. Defense counsel said that she would like for Wilson to be sworn in and corroborate the statements alleged in defendant's Motion for New Trial. Wilson was sworn in, but the trial judge stopped the testimony, stating that defense counsel could not call a juror to impeach a verdict because the law did not allow that.
Defense counsel said that she was not trying to impeach the verdict, but was trying to show that defendant was entitled to a new trial because of disclosures that were not made during voir dire that she relied upon. The trial judge stated that he would continue the motion hearing for a week in order to research the issue. At the continuation of the hearing, the trial judge denied the motion, stating in pertinent part:
. . . [H]ad the essence of what Ms. Williams [defense counsel] put in her motion been to the four or five criteria that people have to meet in order to serve as a juror and had it been one of those that was called into question, I would allow the juror to come in and testify to her not having the criteria or qualifications to serve as a juror. However, I'm going to accept as true what Ms. Williams has stated in her motion and I wrote the juror a letter saying that she didn't have to come to court today and sent a copy to both counsel because I am accepting what she said in her motion as true, that she had approached Ms. Williams after the trial and made that statement; that in and of itself would not cause the court to say that it was an unfair verdict and she would have been stricken as a juror based on the fact that she was the victim in an unsolved crime, unrelated to the instant charge. That being the case, I am going to deny the Motion for a New Trial that was sort (sic) on that basis.
LSA-C.Cr.P. art. 855 sets forth the necessary allegations when a Motion for New Trial is based on prejudicial error or defect in the proceedings:
A motion for a new trial based on ground (4) of Article 851 shall contain allegations of fact sworn to by the defendant or his counsel, showing:
(1) The specific nature of the error or defect complained of; and
(2) That, notwithstanding the exercise of reasonable diligence by the defense, the error or defect was not discovered before or during the trial.
Under LSA-C.Cr.P. art. 851(4), the error or defect must be prejudicial to the defendant before a new trial can be granted.[7] The ruling on a Motion for New Trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion.[8]
Louisiana courts have addressed the issue of juror deception in various cases. In State v. Gerard, 96-366 (La.App. 5 Cir. 11/14/96), 685 So.2d 253, defendant moved for a new trial based on information obtained after the verdict that one of the jurors was the godfather of his co-defendant Bourgeois. The trial court held an evidentiary hearing at which the juror testified, saying that he could not recall the last time he saw Bourgeois prior to trial. Moreover, the juror testified that he voted "not guilty." As such, the trial court found that Gerard failed to show that he *891 was prejudiced by the result of the juror's failure to disclose his relationship to the co-defendant.
In State v. Delore, 381 So.2d 455, 460 (La.1980), defendant contended that the trial court should have granted his Motion for a New Trial because of a personal friendship between a juror and a State witness. It was alleged that the juror misled the defense by failing to reveal her friendship with the witness. At the hearing on the motion, the juror testified that if she had known him "real personally" she would have said so on voir dire. Id. at 460. The testimony revealed that the two had only met a few times at the home of a mutual friend. As such, the Louisiana Supreme Court concluded that the acquaintance between the two was not a valid ground for a mistrial.
Likewise, in State v. Johnson, 32,910 (La.App. 2 Cir. 1/26/00), 750 So.2d 398, 403-404, writ denied, XXXX-XXXX (La.11/3/00), 773 So.2d 140, defendant claimed that the trial court erred by failing to grant his Motion for New Trial, which alleged that two jurors were dishonest in their responses regarding relatives who had drug addictions, and that one of the jurors knew defendant had served time for a drug offense and informed the other jurors of that fact. At the hearing, the two jurors denied the allegations. The appellate court concluded that defendant could not show prejudice, in part because defendant failed to present any evidence to contradict the testimony of the two jurors. Thus, it found no error in the trial court's denial of the Motion for New Trial.
Similarly, in State v. Bailey, 261 La. 831, 261 So.2d 583, 585-586 (1972), defendant filed a Motion for New Trial contending that a juror gave a false answer during voir dire when he said that he had never been a member of a law enforcement agency. At the hearing on the motion, the juror admitted he had once served as a radio operator for the State police and that he presently held a commission as a deputy sheriff. He thought the question was whether he was a policeman and, therefore, he believed he answered truthfully. The Supreme Court found that defendant would not have been successful in a challenge for cause under LSA-C.Cr.P. art. 797(2)[9] because the voir dire examination showed the juror to be impartial. The Supreme Court noted that the juror testified at the hearing that he was not partial to the State. It further found that defendant was not entitled to a new trial based on the speculation that if he had obtained certain information, he might have exercised one of his peremptory challenges.
The foregoing jurisprudence illustrates two main points. First of all, those cases show that allegations of juror deception in a Motion for New Trial are not limited to the general qualifications necessary to serve as a juror under LSA-C.Cr.P. art. 401. Secondly, in each of the cases discussed above, an evidentiary hearing was held in connection with the Motion for New Trial where the jurors in question were allowed to testify regarding their alleged misrepresentations.[10]
*892 In the instant case, the trial judge erred when he limited defendant's right to a hearing to the five general qualifications a person must possess under the law in order to qualify as a juror. The trial judge also erred when he accepted the juror's allegations that she had been the victim of a crime by a "colored man" as true, yet failed to provide defendant with the opportunity to show prejudice.[11]
Based on the foregoing, we remand for an evidentiary hearing on this issue.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that his two maximum concurrent sentences were excessive. He contends that he is not the most egregious of offenders, and that this incident involved a family argument that escalated. He points out that Ms. Gross wanted the charges dropped, and that Ms. Gross' daughter refused to testify against him. He asserts that although the trial court based its reason for the maximum sentences on his "history of lawlessness," the record is devoid of any evidence of prior convictions or arrests. Defendant also notes that excessive force may have been used on him since he had to be taken to the hospital following the incidents.
Defendant filed a Motion to Reconsider the Sentence, arguing only that his six-year sentence was excessive. This Court has recognized that the failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only.[12] Accordingly, defendant's sentence is reviewed only for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering.[13] In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence.[14]
In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.[15] The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons *893 for the sentence.[16] Maximum sentences are appropriately imposed only for the most serious violation of the described offense and for the worst kind of offender.[17]
Defendant was convicted of unauthorized entry of an inhabited dwelling in violation of LSA-R.S. 14:62.3. Whoever commits that crime shall be fined not more than $1,000.00 or imprisoned with or without hard labor for not more than six years, or both. LSA-R.S. 14:62.3 B. Defendant was also convicted of simple criminal damage to property over $500.00 (but less than $50,000.00) in violation of LSA-R.S. 14:56. Whoever commits that crime where the damage amounts to $500.00, but less than $50,000.00, shall be fined not more than $1,000.00, or imprisoned, with or without hard labor, for not more than two years, or both. LSA-R.S. 14:56 B.
The record indicates that defendant was sentenced to the maximum sentence on each count, to run concurrently, and that the $1,000.00 fines imposed on each count were suspended. Prior to sentencing, the trial judge stated:
Mr. Jupiter, you have a history of getting in trouble with the law. You have a history of, in this court's opinion, of lawlessness. I didn't order a pre-sentence investigation because the sentencing range was not so onerous that it would shock the conscious to order a pre-sentence investigation. Let me start that one over. It would shock the conscious for me to give you the maximum. It's not like you were facing armed robbery of 5 to 99 years ...
Defense counsel did not orally object to the sentences.
In the instant case, the crimes with which defendant was charged involved violence against persons. The record shows that defendant kicked down the door of his girlfriend's parents' apartment at 4:30 a.m., struck his girlfriend, and then fled. The record further reflects that defendant subsequently refused to obey police commands to stop, that he resisted arrest, and that he kicked out the window of the police unit after being handcuffed and placed in the rear of that unit. As a result of his actions, defendant was charged with numerous crimes, including simple battery, three felony counts of battery on a police officer, attempted simple escape, two counts of resisting an officer, and another count of simple criminal damage to property. Had the State not reduced the felony counts of battery on a police officer to misdemeanors and dismissed the remaining charges, defendant could have received longer sentences than the ones that were imposed had he been convicted of those charges.
Defendant argues that the sentences were excessive, in part, because the incidents involved a family dispute that escalated. "Merely because the defendant's behavior was rooted in a domestic dispute does not mean that a term of imprisonment was inappropriate." State v. Shannon, 04-1361 (La.App. 5 Cir. 4/26/05), 902 So.2d 519, 524.
Defendant also argues that the trial court erred in basing the sentences on his "history of lawlessness" since the record is devoid of any evidence of prior convictions or arrests. As was stated previously, the record indicates that defendant was charged with numerous other crimes in connection with this case. This Court has *894 held that a sentencing judge may consider not only convictions, but past criminal behavior that did not result in a conviction.[18]
In State v. Williams, 32,993 (La.App. 2 Cir. 3/1/00), 754 So.2d 418, 423-424, defendant went to his girlfriend's apartment, kicked the door in, and entered. She attempted to leave the apartment, but defendant physically restrained her. Eventually, she managed to escape. The appellate court found that sentencing defendant to five years at hard labor for unauthorized entry of an inhabited dwelling was not constitutionally excessive, noting that the trial court concluded that defendant was in need of correctional treatment and a lesser sentence would deprecate the seriousness of the offense.
In State v. Goodman, 96-376 (La.App. 3 Cir. 11/6/96), 684 So.2d 58, 59-63, defendant entered the home of an elderly couple and encountered the female victim who screamed, which alerted the woman's husband. As the husband attempted to reach his wife, he saw defendant. During a brief struggle, defendant struck the husband over the head and fled. The appellate court stated that a sentence of five-and-a-half years at hard labor for unauthorized entry into an inhabited dwelling was not unconstitutionally excessive, where the maximum sentence allowed by law was six years, defendant was originally charged with aggravated burglary and benefited from an agreement to plead to a lesser charge, defendant committed assault and battery upon the victims but was not charged with those crimes, and defendant had an extensive criminal history.
In State v. Gibson, 591 So.2d 416, 417-420 (La.App. 4 Cir.1991), defendant entered his aunt's house without her permission and allegedly took a microwave and two wall clocks. He was subsequently convicted of unauthorized entry of an inhabited dwelling and received a six-year sentence. The appellate court found that the six-year sentence was not excessive, noting that, even though it was the maximum sentence and no violence was involved, defendant had an extensive criminal record including numerous convictions, some of which involved violence against persons. The appellate court also noted that defendant was probably involved in a more serious offense than the charge for which he was convicted.
Regarding the sentence for simple criminal damage to property, in State v. Trahan, 608 So.2d 679, 680-684 (La.App. 3 Cir.1992), defendant stole a car and wrecked it. The appellate court concluded that sentences of four years at hard labor for the simple burglary conviction and two years at hard labor for the simple criminal damage to property conviction, to be served concurrently with each other, but consecutive to any other sentence, were not excessive. Even though each sentence exceeded the maximum sentence in the appropriate grid cell and the criminal damage sentence greatly exceeded the sentencing range, the trial judge stated that he considered the presentence report and criminal history of defendant and took into consideration loss to the victim, as well as benefits defendant received from the plea bargain.
It is apparent from the trial court's remarks that he considered that defendant was charged with other offenses stemming from the same incident, and moreover was familiar with the defendant's history. We conclude that the sentences in this case are not so disproportionate as to shock its *895 sense of justice and find that the trial court did not abuse its discretion in sentencing defendant to two concurrent maximum sentences.

ERROR PATENT DISCUSSION[19]
The record was reviewed for errors patent, which revealed that the trial court failed to advise defendant of the prescriptive period for post-conviction relief as provided in LSA-C.Cr.P. art. 930.8. Therefore, we remand this matter to the trial court to properly inform defendant of the prescriptive period by sending defendant written notice within ten days of the rendition of the opinion and to file written proof in the record that defendant received such notice.[20]
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED FOR EVIDENTIARY HEARING.
NOTES
[1] Defendant was also charged with simple battery, three felony counts of battery on a police officer, attempted simple escape, two counts of resisting an officer, "simple batteryDVA," and another count of simple criminal damage to property. The State later reduced the three counts of battery on a police officer to misdemeanors to which defendant pled guilty. The trial court sentenced defendant on those three counts to six months in parish prison on each count to run concurrently with the time he was serving on the felony convictions. The State nolle prossed the remaining charges.
[2] State v. Jupiter, 05-KA-869 (La.App. 5 Cir. 2/3/06), 922 So.2d 1245.
[3] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
[4] State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63.
[5] State v. Lastrapes, 443 So.2d 652, 656 (La. App. 3 Cir.1983) quoting State v. Perry, 408 So.2d 1358 (La.1982).
[6] State v. Ditcharo, 98-1374 (La.App. 5 Cir. 7/27/99), 739 So.2d 957, 966, writ denied, 1999-2551 (La.2/18/00), 754 So.2d 964.
[7] State v. Tracy, 02-0227 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 515, writ denied, 2002-2900 (La.4/4/03), 840 So.2d 1213.
[8] Tracy, 831 So.2d at 512.
[9] Art. 797. Challenge for cause

The state or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
[10] In brief, defendant cites U.S. v. Scott, 854 F.2d 697 (5th Cir.1988), a decision by the U.S. Fifth Circuit Court of Appeal to set aside a district court's denial of a Motion for New Trial based on juror deception. In that case, as in the Louisiana cases discussed above, an evidentiary hearing was held on the Motion for New Trial before a ruling on the motion was made.
[11] The fact that a juror personally has been the victim of a crime will not necessarily preclude that juror from serving on a jury so long as the juror's partiality has been unaffected. State v. Walker, 577 So.2d 770 (La. App. 2 Cir.1991), writ denied, 581 So.2d 704 (La.1991); see also State v. Eskano, 00-101 (La.App. 5 Cir. 1/30/01), 779 So.2d 148.
[12] State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243.
[13] State v. Lobato, 603 So.2d 739, 751 (La. 1992).
[14] State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879.
[15] State v. Allen, supra.
[16] State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192.
[17] State v. Perrilloux, 03-917 (La.App. 5 Cir. 12/30/03), 864 So.2d 843, 854, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 830.
[18] State v. Anderson, 02-273 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, 522, writ denied, 2002-2519 (La.6/27/03), 847 So.2d 1254; State v. Gilbert, 00-1822 (La.App. 5 Cir. 1/16/01), 788 So.2d 574, 577.
[19] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[20] State v. Knight, 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 951.