996 So.2d 1157 (2008)
STATE of Louisiana
v.
Lajohn MARTIN.
No. 07-KA-1035.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2008.
*1158 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Parish of Jefferson, Terry M. Boudreaux, Kia Habisreitinger, Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Frank Sloan, Attorney at Law, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
The Defendant, Lajohn Martin, appeals his convictions of two counts of second degree kidnapping and two counts of armed robbery, in violation of La.R.S. 14:44.1 and La.R.S. 14:64. We affirm.
The Defendant was sentenced to forty years on each of the kidnapping convictions and ninety-nine years on each of the armed robbery convictions. The sentences are to be served without the benefit of parole, probation or suspension of sentence, and to run concurrently with each other.
On the night of December 20, 2003, Steven Mars received a page from an acquaintance, Corey Butler, afterwhich, he and his cousin, Michael Coleman, drove to Taffy Drive in Marrero in Jefferson Parish where they saw Butler and the Defendant standing outside of a house. According to Mars, Butler asked him to step out of the car. Mars exited the vehicle and told Coleman to park the car. Butler then walked over to the side of the house, at which time the Defendant approached Mars. The Defendant pointed a gun at Mars, went through his pockets, and took his wallet containing approximately $600-$700. The Defendant then forced Mars at gunpoint into the back seat of Mars' car. Coleman was still in the driver's seat. Butler and the Defendant then entered the car. Butler sat next to Mars. The Defendant sat in the front passenger seat, pointing a gun at Coleman, and ordered him to drive. The Defendant also patted Coleman's waist and pockets, but found no money. During the drive, the Defendant rummaged through the glove compartment and the center console, but again found nothing to steal. After the Defendant told the victims he was not going to kill them, Mars told him there was a gun in the center console. The Defendant retrieved the gun and gave it to Butler, who pointed it at Mars.
The Defendant directed Coleman to drive to Algiers in Orleans Parish, where they stopped on an isolated dirt road. The Defendant ordered the victims out of the car and forced them to lie face down on the ground. Gunshots were fired, striking both men. Mars did not see who fired the gun, but he sustained seven gunshot wounds. Coleman was grazed by flying bullets. As soon as the Defendant and Butler left the scene in Mars' car, Coleman ran for help.
When the investigating officers arrived, they were unable to talk to Mars, who had already been transported to Charity Hospital seriously injured. At the scene, Coleman named Butler as one of the perpetrators and gave a description of the Defendant's physical characteristics and clothing. Coleman then led the police to the house on Taffy Drive, where he believed Butler lived.
The next day, after verifying that the Defendant and Butler lived at that residence, *1159 the police went to the home. Detective Dan Russo obtained Victor's consent to search her home the day after the incident, but found nothing of interest during that search.
Detective Jeffrey Rodriguez went to Victor's residence two days after the incident. After he asked Victor to allow him to search the residence, she agreed for the second time. She also signed a consent to search form in the presence of another resident of the home after it was read to her in its entirety. The Detective told Victor that they were looking for a blue leather jacket that was worn by the Defendant on the night of the incident, whereupon Victor led the officers to a bedroom closet where they found a duffle bag containing the blue leather jacket.
The Detective testified he did not threaten Victor, or make her any promises in exchange for her consent to search. Detective Rodriguez said he advised Victor that she had the right to refuse the search. As a precaution, prior to obtaining Victor's consent to search, the Detective advised her of her rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He did this because he did not know the extent of her involvement in the incident at that point in the investigation. The Detective stated that at no time was Victor told she would be arrested. He noted, however, that she was aware that she might be arrested.
Meanwhile, Coleman positively identified the Defendant and Butler from photographic lineups as the perpetrators. The police also located Mars' vehicle at an apartment complex where the Defendant's step-father lived. The car had been set on fire and destroyed. The Defendant was subsequently arrested.
On appeal, the Defendant asserts that the evidence was insufficient to support the conviction for the armed robbery of Coleman (count four). He further asserts that the trial judge erred or abused his discretion in denying the Motion to Suppress the Evidence.
The Defendant first argues the State failed to produce sufficient evidence that Coleman was the victim of an armed robbery in Jefferson Parish, because the car was physically taken from Coleman in Orleans Parish and not Jefferson Parish.
This argument relates to proper venue, rather than sufficiency of the evidence. In that regard, La.C.Cr.P. art. 611(A) states that all criminal trials take place in the parish where the offense occurred, and that if the elements of an offense occurred in more than one parish, the offense is deemed to have been committed in any parish in which any element occurred.
La.C.Cr.P. art. 615 requires that any allegation of improper venue be raised in advance of trial by a motion to quash. It further states that "[v]enue shall not be considered an essential element to be proven by the state at trial."
In State v. Rideout, 42,689, p. 4 (La.App. 2 Cir. 10/31/07), 968 So.2d 1210, 1212, the court noted that under Article 615, "if the defendant feels that he is being charged for an offense that occurred in another parish, ... he must raise the issue before trial by a motion to quash, and it must be decided by the court before trial." The court stated that, because venue is not an element of the crime, a defendant waives any issue of venue when he fails to file a motion to quash. Id. at 4, 968 So.2d at 1213.
The Defendant did not file a motion to quash or assert improper venue at the trial court level. Thus, the issue of improper venue was waived.
Furthermore, the record shows the evidence was sufficient to support the Defendant's conviction for armed robbery.
The standard of review for the sufficiency of the evidence to uphold a conviction *1160 is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A); State v. Carter, 98-24, p. 15 (La.App. 5 Cir. 5/27/98), 712 So.2d 701, 708, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444.
Property that is taken is considered under the victim's control when the victim could have prevented the taking had he not been subjected to violence or intimidation of the robber. State v. Mason, 403 So.2d 701, 704 (La.1981). The State need not prove that the property taken was owned by the victim, but only that the accused was not the owner and the victim had a greater right to the item than the accused. State v. Banks, 96-652, p. 13 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 410-11. Furthermore, the act of pointing a gun at a victim is sufficient to prove the element of force or intimidation for purposes of armed robbery. State v. Ballard, 03-319, p. 7 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, 1073, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739.
The evidence here shows that the Defendant took the car, a thing of value, that was being driven by Coleman. Coleman was driving the car with the permission of Mars, the owner, and the Defendant pointed a gun at Coleman when he ordered him to drive the car to another location. Thus, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
The Defendant next argues that the trial judge erred in denying his motion to suppress the evidence because the consent to search his residence was involuntary. The Defendant sought to suppress the clothes found in the home worn by the perpetrator. He asserts the Victor's consent to search the home was obtained only after police officers threatened to arrest her.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Addison, 05-378, p. 8 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 890, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36. The trial court's ruling on a motion to suppress is afforded great weight and will not be overturned unless it is clearly erroneous. State v. Cambre, 04-1317, p. 14 (La.App. 5 Cir. 4/26/05), 902 So.2d 473, 482, writ denied, 05-1325 (La.1/9/06), 918 So.2d 1039. To determine whether the trial court's denial of a motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial. Addison, 05-378 at 8-9, 920 So.2d at 890.
The officers who searched Victor's residence did not have a search warrant. A warrantless search is per se unreasonable unless it is justified by one of the exceptions to the Fourth Amendment's warrant requirement. Addison, 05-378 at 9, 920 So.2d at 891. Consent to search is a recognized exception to the warrant requirement. Id. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. Addison, 05-378 at 9, 920 So.2d at 891. Voluntariness of consent is a question of fact which the trial judge must determine based on a totality of the circumstances. Id.
*1161 The Defendant relies on State v. Alexis, 514 So.2d 561 (La.App. 4 Cir. 1987), to support his position that the threat of arrest vitiates a consent to search. In Alexis, the defendant's father consented to a search of his home after being advised that if he did not consent to search, the police could obtain a search warrant and would take all of the family to jail if drugs were ultimately found on the premises. They were also told that the officers were interested in the defendant's brother and that if his parents gave their consent to search and drugs were found, then only the defendant would be taken to jail and the rest of the family would be left alone. The Fourth Circuit determined that this statement constituted illegal duress or coercion because it was the carrot and stick type of pressure that vitiated the voluntariness of the father's consent to search. Alexis, 514 So.2d at 564.
In State v. Franklin, 95-1876 (La.1/14/97), 686 So.2d 38, the police obtained consent to search the defendant's house from his girlfriend, who also resided at the home. At the suppression hearing, the officer admitted he told the girlfriend that she would be arrested as an accessory if the search of the home yielded evidence of the armed robbery. The Louisiana Supreme Court found that this statement did not constitute a threat that would affect the voluntariness of her consent to search. The supreme court explained:
[T]he statement was not made in the context of a promise to forego arrest in exchange for consent or of a threat to make the arrest if she failed to consent. Rather, the statement was made in the context of information on what to expect if the search, either with a warrant or with consent, yielded evidence of an armed robbery.
Franklin, 95-1876 at 6, 686 So.2d at 41.
In this case, Victor was never told she would be arrested. Victor was simply advised of her Miranda rights as a precaution. Victor did not testify at either the suppression hearing or trial, thus, Detective Rodriguez's testimony was uncontroverted. Furthermore, there is no evidence in the record indicating that Victor's possible arrest was premised on her unwillingness to consent to the search. Since she was advised of her Miranda rights, Victor was fully informed of the circumstances prior to voluntarily signing the consent to search form. Accordingly, we find that the trial judge did not err in denying the Defendant's motion to suppress the evidence.

ERROR PATENT
The record was reviewed for additional patent errors in accordance with La. C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Polizzi, 05-478, p. 18 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 315. We find no errors requiring action.
Accordingly, the Defendant's convictions and sentences are hereby affirmed.
AFFIRMED.